## CITY OF TORRINGTON *v.* ZONING COMMISSION OF THE TOWN OF HARWINTON ET AL.
### (AC 20249)

Foti, Dranginis and Hennessy, Js.

Argued January 23—officially released June 19, 2001

*Randall S. McHugh,* with whom, on the brief, was *Charles F. Basil,* for the appellant (plaintiff).

*Michael D. Rybak,* for the appellee (named defendant).

*Robert A. D'Andrea,* for the appellees (defendant Anthony D'Andrea et al.).

*Opinion*

FOTI, J. The plaintiff, the city of Torrington, upon certification by this court, appeals from the judgment of the trial court dismissing its appeal from the decision of the named defendant, the zoning commission of the town of Harwinton, granting a special permit and site plan approval to the defendant Jerry Saglimbeni. The commission's decision, subject to the terms and conditions stated therein, permits Saglimbeni to construct a residential community complex on the property of the other defendants in this action, Robert A. D'Andrea and Anthony D'Andrea.

On appeal, the plaintiff claims that the court improperly (1) upheld the Harwinton zoning commission's decision despite the fact that the special use approved by the commission did not conform to the Harwinton zoning regulations, (2) concluded that a 1991 stipulated

judgment in a previous zone change appeal waived, varied, amended or otherwise modified the Harwinton special permit and site plan regulations making the regulations more permissive in connection with the development of the site, (3) concluded that the 1991 stipulated judgment was not void or voidable where it conflicted with General Statutes §§ 8-2, 8-3 and 8-6, (4) failed to consider the plaintiff's claim that the stipulated judgment constituted a de facto amendment to Harwinton's zoning regulations and thereby deprived the plaintiff and others similarly affected of due process protection, (5) failed to find that the stipulated judgment resulted in illegal contract zoning, (6) concluded that the plaintiff was bound by the terms set forth in the stipulated judgment and (7) found that the record contained sufficient evidence to support the commission's approval of the special permit and site plan application. We affirm the judgment of the court based on our resolution of the first issue raised by the plaintiff and we decline to address the plaintiff's remaining claims because they were not raised before the trial court.[1]

---

[1] The plaintiff's brief sets forth the following issues on appeal:

"1. Did the Trial Court err in upholding the Commission's decision despite the fact that the specially permitted use did not conform to the Harwinton Zoning Regulations governing special permits?

"2. Did the Trial Court err in concluding that a 1991 stipulated judgment in a zone change appeal, properly waived, varied, amended or otherwise modified the Harwinton special permit and site plan regulations to make the regulations more permissive in connection with the development of the subject site?

"3. Did the Trial Court err in concluding that the 1991 stipulated judgment was not void or voidable, despite the fact that the agreement resulting in the stipulated judgment was in conflict with Connecticut General Statutes [§§] 8-2, 8-3 or 8-6?

"4. Did the Trial Court err in failing to consider the claim that the effect of the stipulated judgment upon Harwinton's zoning regulations constituted a de facto amendment to said regulations without due process protection to which Torrington and others similarly affected were entitled?

"5. Did the Trial Court err in not finding that the stipulated judgment resulted in illegal contract zoning?

"6. Did the Trial Court err in concluding that the 1991 stipulated judgment

The following facts and procedural history are necessary for our resolution of this appeal. On August 23,

was conclusive and binding upon Torrington?

"7. Did the Trial Court err in finding that there was sufficient evidence in the record to support the approval of the special permit and site plan applications by Harwinton?"

Paragraph twenty-eight of the plaintiff's complaint provides: "In approving the special permit and site plan, the Zoning Commission acted illegally, arbitrarily and in abuse of the discretion vested in it in each of the following ways:

"(a) The Zoning Commission failed to administer the Zoning Regulations by approving an application which did not comply with many of the requirements set forth in the Zoning Regulations;

"(b) The Zoning Commission wrongfully allowed the applicant to submit for consideration two different site plans, in one application;

"(c) The Zoning Commission wrongfully considered two different site plans in one application;

"(d) The Zoning Commission illegally approved the application subject to approvals of agencies over which the Zoning Commission has no control;

"(e) The Zoning Commission failed to follow the recommendation of [its] own engineer whose recommendation was that the access on the Torrington side be emergency only."

We address the plaintiff's first claim because it was raised in the plaintiff's complaint and briefed in the trial court. We note that the trial court declined to address claims (b), (c), (d) and (e) because the plaintiff did not brief those claims. The plaintiff did not request an articulation of the court's decision denying review of those claims. Practice Book § 66-5. "It is the appellant's responsibility to furnish this court with an adequate record for review." *Manchester* v. *Zoning Board of Appeals*, 18 Conn. App. 69, 70 n.1, 556 A.2d 1026, cert. denied, 212 Conn. 804, 561 A.2d 946 (1989); see also Practice Book § 61-10.

The plaintiff's remaining appellate issues, although included in the plaintiff's trial court brief and in its appellate brief, were not raised in the plaintiff's complaint. Therefore, we decline to address issues two through seven as raised by the plaintiff in its appellate brief because "[w]e are not required to review claims that were not distinctly raised in the trial court. Practice Book § 60-5; see *Bell Atlantic Mobile, Inc.* v. *Dept. of Public Utility Control*, 253 Conn. 453, 485, 754 A.2d 128 (2000)." *Kroll* v. *Steere*, 60 Conn. App. 376, 378 n.2, 759 A.2d 541, cert. denied, 255 Conn. 909, 763 A.2d 1035 (2000).

Administrative appeals are civil actions. Practice Book § 14-8. "It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." (Internal quotation marks omitted.) *Lamb* v. *Burns*, 202 Conn. 158, 172, 520 A.2d 190 (1987). "A complaint must fairly put the defendant on notice of the claims . . . against him. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." (Citation omitted.) *Farrell* v. *St. Vincent's*

1989, the planning and zoning commission of the city of Torrington approved a subdivision application to develop a certain parcel of real property located in Torrington that abuts the real property that is the subject of the present case. The subject property is owned by the defendants Anthony D'Andrea and Robert A. D'Andrea (D'Andreas). The D'Andreas' property consists of approximately 10.8 acres of land in Harwinton and is bounded to the north by the Torrington city line. The subdivision approved by the Torrington planning and zoning commission was called "Doolittle Heights Section III" (Doolittle III). As a condition prior to approval of Doolittle III, the Torrington planning and zoning commission required that the D'Andreas place a covenant on the Harwinton land records regarding their property. The covenant provided that the city of Torrington's engineering department must approve any public or private access from the D'Andreas' Harwinton property to a Torrington road.[2]

On November 27, 1989, the D'Andreas applied to the Harwinton zoning commission to change the zone in which their property is located from a "town residential zone" to a "multi-family zone." The zone change from a "town residential zone," which required 65,000 square foot lots, to a "multi-family zone" would allow for multi-family dwelling projects, such as condominiums, to be

Hospital, 203 Conn. 554, 557, 525 A.2d 954 (1987). "This court will not consider issues which are brought to the court's attention for the first time by way of the appellant's brief." Robinson v. ITT Continental Baking Co., 2 Conn. App. 308, 314, 478 A.2d 265 (1984).

[2] By quitclaim deed, made for the purpose of creating the covenant, the D'Andreas conveyed the property to themselves with the following covenant running with the land: "THAT SHOULD THE GRANTEES, their heirs, executors or assigns, now or in the future, desire to obtain public and/or private access from the above described property to property and/or a public street located in the Town of Torrington, it is understood that such access shall be made at a location to be approved by the City of Torrington Engineering Department."

constructed on lots of five acres or larger by special permit.

On April 23, 1990, the commission denied the D'Andreas' application. On June 5, 1990, the D'Andreas appealed from the commission's denial of their application. On January 28, 1991, the D'Andreas and the commission agreed to a stipulated judgment.[3] The stipulated

---

[3] The trial court, *Susco, J.*, after a hearing, accepted the parties stipulated judgment. The terms and conditions of the judgment provide:

"1. The [applicants'] application is granted, and, therefore, the parcels of property designed in said application as Parcels 'A' and 'B,' having a total area of 10.78 acres, and as more particularly shown on a certain survey map entitled 'Map Showing Property of Anthony D'Andrea & Robert D'Andrea and Property to Be Acquired From Maureen J. Beyus Torcon Drive & Mountain View Drive Harwinton Connecticut' dated 6-17-88 as revised 10-10-89, a copy of which is attached hereto and made a part hereof, (the 'Parcels'), are hereby designated as being zoned 'Planned Residential Family' as presently provided in Section 4.7 of the Zoning Regulations.

"2. Notwithstanding any provisions to the contrary [contained in the] Zoning Regulations, the Parcel shall contain a maximum development of 36 single units with 2 bedrooms each, which shall be limited, however, to no more than 4 single family units per structure (the 'Project').

"3. Notwithstanding any provision to the contrary contained in the Zoning Regulations, the [applicants] may submit a single application for a Special Permit as required by Section 4.7 and Section 8 of the Zoning Regulations, and the [commission] agrees to permit the construction of 36 single family units on the Parcels.

"4. Notwithstanding any provisions to the contrary contained in the Zoning Regulations, the [commission] acknowledges that the [applicants] have adequate 'usable' area, as said term is defined in Section 4.7.4 of the Zoning Regulations, contained on the Parcels so as to permit the construction of said 36 single family units.

"5. Notwithstanding any provisions to the contrary contained in the Zoning Regulations, the [commission] acknowledges that the [applicants] have adequate road access to the Project which road access shall be either through Torrington, Harwinton, or a combination of the two as determined by the [commission]. The constructed roads within the Project shall be private roads. The roadways, storm water drainage system, ponds, sewer system and any other common area improvements within the Project shall be maintained by a Unit Owner's Association to be formed by the [applicants] pursuant to the provisions of Chapter 828 of the General Statutes, which chapter is cited as 'The Common Interest Ownership Act.'

"6. In the event the Project requires the discharge of storm water into a Harwinton storm water drainage system, then the [applicants] agree to

judgment sustained the D'Andreas' appeal and changed the zone designation. Additionally, the agreement contained three significant provisions in which the commission acknowledged that the D'Andreas (1) had adequate "usable" area, (2) could build thirty-six units and (3) could submit a single application for a special permit.

On April 27, 1998, Saglimbeni applied to the commission for a special permit and site plan approval of a development to be located on the 10.8 acres of the D'Andreas' land. Saglimbeni's application sought approval of a thirty-six unit residential common interest ownership community with one site plan showing the development having full vehicular access in Harwinton and only gated emergency access into Torrington. A second site plan in the application sought approval of the development with unrestricted access to both Harwinton and Torrington.

Because the proposed development was located within five hundred feet of the Torrington city line,

provide an engineered storm water drainage system which will result in no increase in the peak rate of said storm water discharge calculated on a 100 year storm projection.

"7. In the event the Project requires the discharge of storm water into a Harwinton storm water drainage system, then the [applicants] agree to make such reasonable off-site improvements to the Harwinton storm water drainage system along or near the roads abutting the Parcels as recommended by the engineers for Harwinton. The purpose of such reasonable off-site improvements shall be to assist Harwinton in correcting storm water drainage problems which may result from the construction of the Project.

"8. All areas designated as Open Space within the Project shall be owned by the Unit Owner's Association. Said Open Space shall neither be transferred by the Unit Owner's Association, nor shall said Open Space be utilized for the construction of any additional residential dwellings.

"9. The [applicants] will not seek to make any roadway within the Project public absent written consent from the Harwinton Zoning Commission, the Harwinton Planning Commission, and the Harwinton Board of Finance.

"10. The terms and conditions contained in this Stipulation shall apply in their entirety to the parties, and bind the heirs, executors, administrators, successors and assigns of said parties."

the commission, pursuant to General Statutes § 8-3h,[4] notified the Torrington town clerk of the pendency of Saglimbeni's application. On May 27, 1998, the planning and zoning commission of the city of Torrington voted unanimously to recommend that no access be allowed from the D'Andreas' property to any Torrington street. On June 1, 1998, the Torrington planning and zoning commission sent notice of its decision to the Harwinton zoning commission.

On various dates between June 9, 1998, and July 27, 1998, the Harwinton zoning commission held public hearings pursuant to General Statutes § 8-3c (b).[5] Har-

[4] General Statutes § 8-3h provides: "The zoning commission of any municipality shall notify the clerk of any adjoining municipality of the pendency of any application, petition, request or plan concerning any project on any site in which: (1) Any portion of the property affected by a decision of such zoning commission is within five hundred feet of the boundary of the adjoining municipality; (2) a significant portion of the traffic to the completed project on the site will use streets within the adjoining municipality to enter or exit the site; (3) a significant portion of the sewer or water drainage from the project on the site will flow through and significantly impact the drainage or sewerage system within the adjoining municipality; or (4) water runoff from the improved site will impact streets or other municipal or private property within the adjoining municipality. Such notice shall be made by certified mail, return receipt requested, and shall be mailed within seven days of the date of receipt of the application, petition, request or plan. No hearing may be conducted on any application, petition, request or plan unless the adjoining municipality has received the notice required under this section. Such adjoining municipality may, through a representative, appear and be heard at any hearing on any such application, petition, request or plan."

[5] General Statutes § 8-3c (b) provides: "The zoning commission or combined planning and zoning commission of any municipality shall hold a public hearing on an application or request for a special permit or special exception, as provided in section 8-2, and on an application for a special exemption under section 8-2g. The commission shall not render a decision on the application until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the zoning commission shall give due consideration to the report of the inland wetlands agency. Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice, at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before the

winton's town engineer recommended to the commission that any access to Torrington roads be on an emergency basis only.

Saglimbeni's application proposed that all of the drainage from the proposed development enter into an on-site detention basin, the outlet of which would connect to the Torrington storm sewer system. The proposed connection to Torrington's sewer required the plaintiff's approval. The plaintiff did not approve the connection to its storm sewer system because Saglimbeni did not demonstrate that Torrington's storm water system would have the capacity to handle the proposed development's generated storm water.

Saglimbeni's application also sought to discharge the sewage from the site to the Harwinton water pollution control authority sewer main located under Mountain View Drive. The Harwinton water pollution control authority did not provide formal approval for the sew-

date of such hearing. In addition to such notice, such zoning commission may, by regulation, provide for notice by mail to persons who are owners of land which is adjacent to the land which is the subject of the hearing. At such hearing any party may appear in person and may be represented by agent or by attorney. Such commission shall decide upon such application or request within the period of time permitted under section 8-7d. Whenever a commission grants or denies a special permit or special exception, it shall state upon its records the reason for its decision. Notice of the decision of the commission shall be published in a newspaper having a substantial circulation in the municipality and addressed by certified mail to the person who requested or applied for a special permit or special exception, by its secretary or clerk, under his signature in any written, printed, typewritten or stamped form, within fifteen days after such decision has been rendered. In any case in which such notice is not published within such fifteen-day period, the person who requested or applied for such special permit or special exception may provide for the publication of such notice within ten days thereafter. Such permit or exception shall become effective upon the filing of a copy thereof (1) in the office of the town, city or borough clerk, as the case may be, but, in the case of a district, in the offices of both the district clerk and the town clerk of the town in which such district is located and (2) in the land records of the town in which the affected premises are located, in accordance with the provisions of section 8-3d."

age disposal because Saglimbeni did not formally apply for a sewer connection permit. The commission required this as a condition prior to approval.

At the public hearings in June and July, 1998, Saglimbeni's attorney referred to the 1991 stipulated judgment as binding on the commission despite the Harwinton zoning regulations that may in some instances impose greater restrictions or higher standards on the use of the site. On September 17, 1998, the commission unanimously approved Saglimbeni's application and site plan, which showed the development as having full and unrestricted vehicular access into both Harwinton and Torrington. The commission did, however, place nineteen restrictions on its approval. The two most significant restrictions required that Saglimbeni receive final approval from the Torrington engineering department and the Harwinton water pollution control authority prior to commencing construction on the site. The commission published notice of its approval of Saglimbeni's application in the Waterbury Republican-American on September 25, 1998. The plaintiff appealed from the commission's decision to the Superior Court on October 7, 1998. On July 30, 1999, the court found for the defendants and dismissed the appeal. The plaintiff appealed, and we granted certification.

The plaintiff claims that the court improperly upheld the commission's decision when the special use for which Saglimbeni applied did not conform to the Harwinton zoning regulations governing special permits. In response, the commission argues that it properly approved the application on the basis of the contents of the 1991 stipulated judgment and the additional restrictions that it placed on the application. We agree with the commission.

Before we address the plaintiff's claims, we first state the applicable standard of review. "Conclusions

reached by [a zoning] commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [commission]. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [commission] supports the decision reached. . . . *Calandro* v. *Zoning Commission*, 176 Conn. 439, 440, 408 A.2d 229 (1979). . . . *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 513, 636 A.2d 1342 (1994). The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority as long as it reflects an honest judgment reasonably exercised. . . . The court's review is based on the record, which includes the knowledge of the board members gained through personal observation of the site . . . or through their personal knowledge of the area involved. . . . *Cybulski* v. *Planning & Zoning Commission*, [43 Conn. App. 105, 111, 682 A.2d 1073, cert. denied, 239 Conn. 949, 686 A.2d 123 (1996)]." (Internal quotation marks omitted.) *Raczkowski* v. *Zoning Commission*, 53 Conn. App. 636, 642–43, 733 A.2d 862, cert. denied, 250 Conn. 921, 738 A.2d 658 (1999).

Absent bad faith, collusion or other improper conduct by the parties, a planning commission may settle an appeal by way of a stipulated judgment. See *Sendak* v. *Planning & Zoning Commission*, 7 Conn. App. 238, 244, 508 A.2d 781 (1986). Competing social interests exist when a commission decides to settle an appeal in such a manner. See id., 242. "One is the powerful interest in the promotion of settlement of litigation by agreement of the parties. See, e.g., *Blake* v. *Levy*, 191 Conn. 257, 264, 464 A.2d 52 (1983). Our Supreme Court has clearly recognized that this interest applies to administrative proceedings by explicitly approving a

stipulation for judgment in an administrative appeal then pending before it. See *Hartford* v. *Hartford Electric Light Co.*, 173 Conn. 340, 377 A.2d 1090 (1977). This interest would be seriously undercut if, after a planning commission has in good faith settled a pending appeal by agreeing to a stipulated judgment, that settlement could be challenged by a subsequent appeal by third parties.

"The other powerful competing social interest is the need for protection of the integrity of the land use planning process. This interest derives from the recognition that, where an initially unsuccessful applicant before a planning commission takes an appeal to the court, the applicant and the commission could abuse the entire process by collusively stipulating to a judgment in the applicant's favor, and thus evade both judicial review and effective scrutiny by potentially aggrieved neighbors whose attempts to intervene had not yet been acted upon. This recognition derives, in turn, from the reality that there are cases in which 'the propriety of the conduct of the commission is open to criticism.' *Mills* v. *Town Plan & Zoning Commission*, 145 Conn. 237, 241, 140 A.2d 871 (1958)." *Sendak* v. *Planning & Zoning Commission*, supra, 7 Conn. App. 242–43.

The legislature enacted General Statutes (Rev. to 1999) § 8-8 (n), now § 8-8 (m),[6] to address the challenges created by these competing interests by requiring that any settlement between the parties to a zoning appeal shall not be effective until a hearing is held before the Superior Court and that court approves the proposed

---

[6] General Statutes § 8-8 (m) provides: "No appeal taken under subsection (b) of this section shall be withdrawn and no settlement between the parties to any such appeal shall be effective unless and until a hearing has been held before the Superior Court and such court has approved such proposed withdrawal or settlement."

settlement.[7] "[This court] has recognized the policy of protecting the public interest by holding open hearings prior to Superior Court approval of a settlement of a land use appeal. *Levine* v. *Plan & Zoning Commission*, 25 Conn. App. 199, 203, 594 A.2d 9 (1991); *Sendak* v. *Planning & Zoning Commission*, [supra, 7 Conn. App. 243 & n.1]. [We have] explained: 'The purpose of the statute is to ensure that zoning matters can be scrutinized by the public by means of a public record.' *Levine* v. *Plan & Zoning Commission*, supra, 203." *Willimantic Car Wash, Inc.* v. *Zoning Board of Appeals*, 247 Conn. 732, 741–42, 724 A.2d 1108 (1999).

"A stipulated judgment is not a judicial determination of any litigated right. . . . It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. . . . [It is] the result of a contract and its embodiment in a form which places it and the matters covered by it beyond further controversy. . . . The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement. . . . *Gillis* v. *Gillis*, 214 Conn. 336, 339–40, 572 A.2d 323 (1990). . . . *Tureck* v. *George*, 44 Conn. App. 154, 161, 687 A.2d 1309, cert. denied, 240 Conn. 914, 691 A.2d 1080 (1997). In approving a settlement affecting the public interest . . . a trial court must be satisfied of the fairness of the settlement. *Janus Films, Inc.* v. *Miller*, 801 F.2d 578, 582 (2d Cir. 1986). . . . *Willimantic Car Wash, Inc.* v. *Zoning Board of*

---

[7] "The legislative history of § 8-8 (n) [now § 8-8 (m)] reflects this policy. It indicates that the requirement of court approval was designed to guard against surreptitious dealing between zoning boards and applicants, to avoid frivolous appeals initiated for 'leverage,' and to ensure that settlements are fair. 27 H.R. Proc., Pt. 10, 1984 Sess., pp. 3780–81, remarks of Representative Richard D. Tulisano." *Willimantic Car Wash, Inc.* v. *Zoning Board of Appeals*, 247 Conn. 732, 742 n.16, 724 A.2d 1108 (1999).

*Appeals,* [supra, 247 Conn. 744]." (Internal quotation marks omitted.) *Rocque* v. *Northeast Utilities Service Co.,* 254 Conn. 78, 83, 755 A.2d 196 (2000).

Because a stipulated judgment is considered to be a contract, "the interpretation of a stipulated judgment, like the interpretation of a contract, is usually a question of fact. *Griffin* v. *Planning & Zoning Commission,* [30 Conn App. 643, 650, 621 A.2d 1359 (1993)], citing *Gurliacci* v. *Mayer,* 218 Conn. 531, 567, 590 A.2d 914 (1991). The interpretation of a contract is a question of law only where the language is definitive and unambiguous. *Levine* v. *Massey,* 232 Conn. 272, 278, 654 A.2d 737 (1995)." (Internal quotation marks omitted.) *Town Close Associates* v. *Planning & Zoning Commission,* 42 Conn. App. 94, 108, 679 A.2d 378, cert. denied, 239 Conn. 914, 682 A.2d 1014 (1996).

The plaintiff argues that Saglimbeni's application did not comply with the Harwinton regulations relating to (1) usable land area requirements, (2) vehicular access, (3) water supply and sewage disposal certification by the health officer and (4) the number of dwelling units allowed in an application for a special permit. Here, the first, second and fourth issues raised by the defendant are expressly provided for by the stipulated judgment. Although the third issue is not provided for in the stipulated judgment, the commission expressly addressed it as a condition of approval. We address each of the plaintiff's claims in turn.

I

The plaintiff first claims that Saglimbeni's application did not conform with the usable land area requirement in violation of § 4.7.4 (c) of the zoning regulations of the town of Harwinton. Specifically, the plaintiff argues that the application does not comply with the portion of that regulation that states that "the minimum required land area per dwelling unit shall be 45,000

square feet of usable land area for each dwelling unit unless the development is served by a public water system approved by the State Department of Health Services and public sewer facilities approved by the Water Pollution Control Authority in which case the maximum number of dwelling units shall be 3.5 per usable acre." The plaintiff cites several reasons why the application does not comport with § 4.7.4. The plaintiff ignores, however, the fact that the judgment controls as a binding contract. Indeed, paragraph four of the stipulated judgment provides: "Notwithstanding any provisions to the contrary contained in the Zoning Regulations, the [commission] acknowledges that the [applicants] have adequate 'usable' area, as said term is defined in Section 4.7.4 of the Zoning Regulations, contained on the Parcels so as to permit the construction of said 36 single family units."

The commission stated that it approved the application for the following reasons: (1) "The application, as presented, meets the regulations, as modified by the Judgment"; and (2) "[b]ased on the public record, the Commission has taken into careful consideration, the health, safety, and welfare of the citizens of the Town of Harwinton." The commission determined that it was bound by the terms of its contract with the D'Andreas. After examining the record, we conclude that the commission properly approved the application because it concluded that the stipulated judgment modified the aforementioned regulation.

II

The plaintiff next argues that the application did not provide proper vehicular access to the proposed development in violation of § 4.7.4 (d) of the zoning regulations of the town of Harwinton. Specifically, the plaintiff challenges the portion of that regulation that provides: "Any development with 30 or more dwelling units or

250 or more projected vehicle trips per day shall have its primary vehicular access either . . . directly onto a State Highway and shall have more than one point of vehicular access to a State Highway or Town road, or . . . directly onto a Town road leading to a State Highway where the Town road has a minimum paved surface width of 22 feet and no grade in excess of 12 [percent] and shall have more than one point of vehicular access to the Town road."

Here, again, the commission found that the regulation was satisfied because the 1991 stipulated judgment modified it to the extent that paragraph five of the judgment provides: "Notwithstanding any provisions to the contrary contained in the Zoning Regulations, the [commission] acknowledges that the [applicants] have adequate road access to the Project which road access shall be either through Torrington, Harwinton, or a combination of the two as determined by the [commission]. The constructed roads within the Project shall be private roads. The roadways, storm water drainage system, ponds, sewer system and any other common area improvements within the Project shall be maintained by a Unit Owner's Association to be formed by the [applicants] pursuant to the provisions of Chapter 828 of the General Statutes, which chapter is cited as 'The Common Interest Ownership Act.' " We conclude that the commission properly concluded that § 4.7.4 (d) was satisfied because of the modifications contained in the 1991 stipulated judgment.

## III

The plaintiff next claims that the application did not conform to § 7.5.12 of the zoning regulations of the town of Harwinton, which requires that a site plan shall contain a certification by the health officer concerning water supply and sewage disposal. Section 7.5 is titled "SITE PLAN REQUIREMENTS" and provides in rele-

vant part: "The plan shall contain the following, as applicable: Certification by the Health Officer concerning satisfactory conditions for water supply and sewage disposal, consistent with the Health Code." This challenge by the plaintiff is not dealt with in the stipulated judgment, and our review of the record leads us to conclude that the site plan did not contain such a certification by the health officer. Nevertheless, we do not agree with the plaintiff that this lack of certification matters because conditions nine[8] and eleven[9] of the terms and conditions of the commission's decision address these issues. Paragraphs nine and eleven of the conditions provide that the applicant must obtain and submit final approval to the commission of his compliance with regulation § 7.5.12. Moreover, § 7.5 of the Harwinton zoning regulations, which specifies the requirements of a site plan, provides that the site plan shall contain these requirements "as applicable."

## IV

The plaintiff next claims that the application did not satisfy the requirement that an application for a special permit consist of no more than thirty dwelling units in violation of § 4.7.3 of the Harwinton zoning regulations. Specifically, the plaintiff relies on the language of the regulation that provides: "[A]n application for a Special Permit in a PR zone shall consist of no more than 30 dwelling units. The Commission shall consider only one application for a Special Permit at a time and shall accept no further applications for a Special Permit

[8] Condition nine of the terms and conditions of the commission's decision provides: "Sewers. The applicant must obtain and submit final approval from the Harwinton Water Pollution Control Authority, as per Sections 1.3.3.f., 4.7.4.c, 7.5.10., and 7.5.12. of the Zoning Regulations and the WPCA report of 3/21/98."

[9] Condition eleven of the terms and conditions of the commission's decision provides: "Water Connection. The applicant must obtain and submit final approval from the Torrington Water [Company], as per Sections 1.3.3.1., 7.5.10., and 7.5.12. of the Zoning Regulations."

within the Planned Residential Zone until such time as 70 [percent] of the dwelling units for any previously approved Special Permit in that Zone have been built and at least 50 [percent] of the total approved dwelling units have been occupied."

The stipulated judgment also modified § 4.7 of the regulations. Indeed, paragraph three of the terms and conditions of the stipulated judgment provides: "Notwithstanding any provision to the contrary contained in the Zoning Regulations, the [applicants] may submit a single application for a Special Permit as required by Section 4.7 and Section 8 of the Zoning Regulations, and the [commission] agrees to permit the construction of 36 single family units on the Parcels." The commission properly found that it was bound by the terms of the stipulated judgment.

We conclude that the plaintiff's claims that the application violated the regulations are without merit because the stipulated judgment controlled all of the regulations with which the plaintiff takes issue. The plaintiff does not challenge the judgment on the basis of collusion, bad faith or other improper conduct. Moreover, the plaintiff neither challenged the 1991 stipulated judgment at the hearing at which the agreement was accepted by the court, nor did the plaintiff move to open the judgment within the time for doing so. We conclude that the commission properly approved the application on the basis of its regulations as modified by the stipulated judgment.

The judgment is affirmed.

In this opinion the other judges concurred.