KEITH PRIOLEAU *v.* COMMISSION ON HUMAN
RIGHTS AND OPPORTUNITIES ET AL.
(AC 30183)

Flynn, C. J., and Alvord and West, Js.

Argued April 23—officially released September 1, 2009

*Keith Prioleau*, pro se, the appellant (plaintiff).

*Charles Krich*, principal attorney, for the appellee (named defendant).

*Opinion*

WEST, J. The plaintiff, Keith Prioleau, appeals from the judgment of the trial court dismissing his appeal from a decision of the defendant commission on human rights and opportunities (commission).[1] The commission determined that there was no reasonable cause to believe that discriminatory or retaliatory practices had been committed and dismissed the plaintiff's complaint without a hearing. The plaintiff claims that the court improperly concluded that (1) the commission applied the proper legal standard to his claims and (2) the commission's findings were supported by substantial evidence. Because we conclude that the court properly dismissed the plaintiff's appeal, we affirm the judgment of the trial court.

---

[1] R. Hamisi Ingram, a former executive director of the commission, also was named as a defendant but is not a party to this appeal.

On October 23, 2003, the plaintiff was laid off from his position as a senior computer scientist and information security specialist at Computer Sciences Corporation (company). Prior to his layoff, the plaintiff worked in the company's global infrastructure security services department and was assigned to its account with United Technologies Corporation (United). On March 30, 2004, the plaintiff filed a complaint with the commission in which he claimed that he had been laid off by the company because of his race and color and in retaliation for his participation in protected activity; specifically, he had opposed the discriminatory conduct of his former employer, which, at the time he was laid off, was a client of the company.[2] On May 24, 2004, the company filed its answer in which it asserted nondiscriminatory bases for the plaintiff's layoff. These bases included an economic downturn that necessitated a large and ongoing reduction in force, the fact that the plaintiff's position had no direct impact on service level agreements[3] between the company and United and issues involving the reliability of the plaintiff. The plaintiff countered these assertions in a July 27, 2004 rebuttal, claiming that the company's contentions were merely a pretext for its discriminatory and retaliatory

[2] The claimed protected activity was the plaintiff's participation in an action brought in federal District Court against Sikorsky Aircraft Corporation alleging racial discrimination in hiring and compensation and a racially hostile work environment. Judgment was entered against the plaintiff in that matter on September 24, 2003.

[3] The record reveals that service level agreements are contractual agreements that provide incentives to the company to meet predetermined monthly service levels for its clients. Douglas Iosbaker, the plaintiff's supervisor, testified at the October 7, 2005 fact-finding proceeding that "there are specific service levels within that contract [with United] that [United] measures [the company's] performance by or on [that could result] in financial impact to [the company] if that service level was not met." Also, in its May 24, 2004 answer to the plaintiff's complaint, the company asserted that it could suffer substantial financial penalty if the service level agreements were not met in any given month.

practices and offered evidence to support his allegations.

On September 7, 2004, the commission, after conducting a merit assessment review pursuant to General Statutes § 46a-83 (b)[4] and concluding that issues of credibility existed that could not be resolved through that procedure, set the plaintiff's complaint for a full investigation and assigned a commission investigator. The purpose of the full investigation of the complaint was to ascertain whether there was reasonable cause to believe that discriminatory or retaliatory practices had been committed as alleged in the plaintiff's complaint. See General Statutes § 46a-83 (c).[5] If the commissioner or investigator found that there was "reasonable cause" to believe that discriminatory or retaliatory acts had been committed and if the complaint was not settled through the procedures outlined in § 46a-83, the

---

[4] General Statutes § 46a-83 (b) provides in relevant part: "Within ninety days of the filing of the respondent's answer to the complaint, the executive director or the executive director's designee shall review the file. The review shall include the complaint, the respondent's answer and the responses to the commission's requests for information, if any, and the complainant's comments, if any, to the respondent's answer and information responses. If the executive director or the executive director's designee determines that the complaint fails to state a claim for relief or is frivolous on its face, that the respondent is exempt from the provisions of this chapter or that there is no reasonable possibility that investigating the complaint will result in a finding of reasonable cause, the complaint shall be dismissed. . . ."

[5] General Statutes § 46a-83 (c) provides in relevant part: "The executive director of the commission or his designee shall determine the most appropriate method for processing any complaint pending after review in accordance with subsection (b) of this section. The commission may conduct mandatory mediation sessions, expedited or extended fact-finding conferences or complete investigations or any combination thereof during the investigatory process for the purpose of finding facts, promoting the voluntary resolution of complaints or determining if there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint. As used in this section and section 46a-84, reasonable cause means a bona fide belief that the material issues of fact are such that a person of ordinary caution, prudence and judgment could believe the facts alleged in the complaint. . . ."

plaintiff would be entitled to a hearing on the matter. See General Statutes § 46a-84.

On October 7, 2005, the commission investigator, Theresa Plato, conducted a formal fact-finding proceeding on the record in which sworn witnesses gave testimony regarding the complaint. At the proceeding, Plato heard from the plaintiff, his former supervisor at the company, Douglas Iosbaker, as well as another company employee, Ginger Roberts. The plaintiff, acting pro se, and the company's attorney were allowed through the investigator to ask questions of the witnesses. After that fact-finding proceeding, both the plaintiff and the company submitted additional evidence.

On February 23, 2006, the commission issued a draft summary finding of no reasonable cause. James M. Flynn, a regional manager with the commission, forwarded a copy of the draft summary finding to the plaintiff. Accompanying the draft summary finding was a letter from Flynn in which he stated that the plaintiff had fifteen days to comment on the draft summary finding. No comments were received by the commission, and, on March 13, 2006, it made its finding of no reasonable cause final. On March 14, 2006, the plaintiff filed a request for reconsideration of the finding of no reasonable cause. On May 15, 2006, the commission issued a written decision denying the plaintiff's request for reconsideration. The plaintiff appealed from the commission's decision to the Superior Court. On July 31, 2008, by memorandum of decision, the court dismissed the plaintiff's appeal. This appeal followed.

"We first note the limited scope of review to be exercised by the trial court in reviewing a [commission] determination that there is no reasonable cause to believe that a discriminatory practice has been committed. Judicial review of an administrative agency decision requires a court to determine whether there is

substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . This substantial evidence rule is embodied in General Statutes § 4-183 (j) (5) and (6).

"The substantial evidence standard is satisfied if the record provides a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The issue before the trial court, therefore, was whether there was a substantial basis in the record to support the commission's finding of no reasonable cause for either the discrimination or retaliation allegation. As [our Supreme Court] noted previously, the term reasonable cause as used in . . . § 46a-83 is synonymous with the term probable cause. . . . Probable cause is a bona fide belief in the existence of facts essential under the law for the action and such as would warrant a [person] of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. . . . It deals with

probabilities, and the application of the factual and practical considerations of everyday life on which reasonable and prudent [people] act. . . . In order to determine whether there was substantial evidence in the record to support the commission's determination, the commission must have conducted a complete and thorough investigation." (Internal quotation marks omitted.) *Ezikovich* v. *Commission on Human Rights & Opportunities*, 57 Conn. App. 767, 770–72, 750 A.2d 494, cert. denied, 253 Conn. 925, 754 A.2d 796 (2000). We now address each of the plaintiff's claims in turn. Further facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly concluded that the commission applied the proper legal standard to his claims of racial discrimination and retaliation. Specifically, the plaintiff argues that the commission was required to use the analytical framework our courts employ when assessing disparate treatment discrimination claims under Connecticut law that was adapted from the United States Supreme Court's decision in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny.[6] We disagree.

---

[6] Our Supreme Court "had occasion to explain the operation of this framework in *Craine* v. *Trinity College*, 259 Conn. 625, 638, 791 A.2d 518 (2002): [T]here are four elements to a prima facie case where the aggrieved party is alleging illegal denial of tenure: (1) that she belongs to a protected class; (2) that she was qualified for tenure; (3) that, despite her qualifications, she was denied tenure; and (4) that the denial took place under circumstances permitting an inference of discrimination. Under this analysis, the employee must first make a prima facie case of discrimination. The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias. . . . The most typical method used by plaintiffs to establish the fourth prong of a prima facie case is to introduce evidence that the defendant . . . promoted comparably qualified individuals not in a protected class of individuals. . . . Importantly, it is also well established that [w]e look to

Our Supreme Court settled this issue in *Adriani* v. *Commission on Human Rights & Opportunities*, 220 Conn. 307, 596 A.2d 426 (1991), on appeal after remand, 228 Conn. 545, 636 A.2d 1360 (1994). As in *Adriani*, the plaintiff here contends that the investigator, in making the reasonable cause determination, and the commission, when reviewing the investigator's recommendation, may consider all of the evidence gathered, but the focus of the inquiry should be on the plaintiff's representations concerning the alleged discrimination. See id. Also, the plaintiff here asserts that the commission is not entitled to draw inferences or to make credibility determinations that would bear on disputed material facts. These assertions misstate the applicable standard employed by the commission in a reasonable cause determination.

In *Adriani*, our Supreme Court went on to note that "[i]n *Ierardi* v. *Commission on Human Rights & Opportunities*, 15 Conn. App. 569, 546 A.2d 870, cert. denied, 209 Conn. 813, 550 A.2d 1082 (1988), the Appellate Court addressed this specific issue. That court rejected the claimant's contention that the reasonable cause standard set forth in § 46a-83 is akin to the concept of a prima facie case, which applies to the complainant's initial burden of production at an adjudicative hearing. . . . The court concluded that the term reasonable cause as used in the statute is synonymous with probable cause." (Internal quotation marks omitted.) *Adriani* v. *Commission on Human Rights & Opportunities*, supra, 220 Conn. 315–16; *Ezikovich* v. *Commission on Human Rights & Opportunities*, supra, 57 Conn. App. 771–72.

federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both." (Citations omitted; internal quotation marks omitted.) *Lyon* v. *Jones*, 291 Conn. 384, 406, 968 A.2d 416 (2009).

Our Supreme Court concluded that the reasonable cause standard requires the commission to consider all reliable probative evidence, including evidence unfavorable to a complainant's claim. *Adriani* v. *Commission on Human Rights & Opportunities*, supra, 220 Conn. 316–17. Moreover, the court went on to "conclude that a necessary corollary to allowing the commission to consider all relevant evidence gathered during the investigation is that in making the reasonable cause determination, the investigator, and the commission when reviewing the investigator's recommendation, are entitled to make findings on disputed issues of material fact by weighing the credibility of the witnesses and drawing inferences." Id., 317. The unavoidable result of the position proffered by the plaintiff is, as our Supreme Court noted, that "any claimant can guarantee that he obtains a hearing simply by alleging in his complaint the existence of direct or overt evidence of discrimination. Such a result would encourage unfounded allegations of overt discrimination, thereby requiring a hearing and effectively rendering the reasonable cause determination a nullity." Id., 318. Accordingly, we conclude that the court properly determined that the investigator and the commission employed the correct analytical framework in their determination of whether there was reasonable cause to believe that discriminatory or retaliatory practices were committed by the company as alleged in the plaintiff's complaint.

II

The plaintiff next claims that the court improperly concluded that the commission's findings were supported by substantial evidence. The plaintiff makes two arguments in this regard: because the commission's finding of no reasonable cause was made on the basis of an inadequate investigation, it was not supported by substantial evidence; and even if the investigation was

adequate, the finding of no reasonable cause is not supported by substantial evidence. We disagree.

### A

### Inadequate Investigation

This claim requires little discussion.[7] We again note that "to determine whether there was substantial evidence in the record to support the commission's determination, the commission must have conducted a complete and thorough investigation." (Internal quotation marks omitted.) *Ezikovich* v. *Commission on Human Rights & Opportunities*, supra, 57 Conn. App. 772. Here, in his principal brief, after citing the entire Uniform Administrative Procedure Act, General Statutes §§ 4-166 to 4-189, the plaintiff merely makes the assertion that "had [the commission] conducted an investigation in accordance [with the requisite] standards, [it] would have uncovered the fact that the [company] lied about eliminating his position in a [reduction in force]." He follows this up with a thorough rendition of his version of the events that both preceded and were

---

[7] As noted previously, the company defended its layoff of the plaintiff by asserting, inter alia, that his position was selected for a reduction in force because his duties did not directly affect the company's service level agreements with its clients. See footnote 3. The plaintiff now asserts on appeal that the commission inadequately investigated those agreements. Our review of the plaintiff's appellate briefs reveals that this claim first was asserted during oral argument before this court. We generally do not consider claims raised for the first time at oral argument. See *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 12 n.8, 826 A.2d 1088 (2003); *Zenon* v. *Mossy*, 114 Conn. App. 734, 736–37 n.2, 970 A.2d 814 (2009). Moreover, our review of the record further indicates that at no time prior to his oral argument before us had the plaintiff requested the commission to review any service level agreements or to compel the company to produce any. We also note that in its May 15, 2006 written decision on the plaintiff's request for reconsideration, the commission concluded that the plaintiff did not rebut the company's contention concerning the role those service level agreements had in its determination to lay off the plaintiff. See Regs., Conn. State Agencies § 46a-54-50a (complainant has duty continuously to provide information to support allegations).

subsequent to his layoff by the company and argues that had the commission conducted an adequate investigation it would have substantiated that the plaintiff was an exemplary employee and that the company's purported reasons for his layoff were mere subterfuge. Essentially, the plaintiff is arguing not that the commission had investigated his claim inadequately but, rather, that it improperly had considered evidence not favorable to him and had drawn improper inferences on the basis of incorrect credibility determinations.

As we stated in part I, both the investigator and the commission are entitled to make findings on disputed issues of material fact by weighing the credibility of the witnesses and drawing inferences. See *Adriani* v. *Commission on Human Rights & Opportunities*, supra, 220 Conn. 318. Moreover, a review of the record clearly shows that the court correctly determined that the commission properly investigated the plaintiff's claims. The commission considered voluminous documents from both parties and held a formal fact-finding hearing after which it solicited from the parties the submission of additional evidence. The commission also sent to the parties a draft of its finding of no reasonable cause, giving the parties an opportunity to comment.[8] Last, we note that the record supports the commission's conclusion that the plaintiff failed to provide sufficient evidence to show that his color, race and participation in protected activity were the bases for his termination. See Regs., Conn. State Agencies § 46a-54-50a. We therefore conclude that the commission's investigation was sufficiently thorough to support its determination by substantial evidence that there was no reasonable cause to believe that the company discriminated or retaliated against the plaintiff when it laid him off.

---

[8] We note that the record reveals that the plaintiff did not submit any comments to the commission in response to its draft finding of no reasonable cause.

## B

### Substantial Evidence

The plaintiff's last claim, that the court improperly concluded that the commission's finding was supported by substantial evidence, essentially is made on the ground that the credibility assessment of the evidence and witnesses made by the investigator and adopted by the commission was in error. In essence, the plaintiff argues that the evidence he submitted was substantial evidence supporting a finding of reasonable cause and that the evidence submitted by the company was not substantial.[9] We do not agree.

"In determining whether an administrative finding is supported by substantial evidence, the reviewing court

---

[9] The plaintiff bolsters this argument by asserting that the commission and the court were bound to draw all reasonable inferences from the evidence submitted in his favor. This issue was disposed of in part I and will not be revisited here.

Also, for the first time in his reply brief, the plaintiff claims that the substantial evidence test is not met because the finding of no reasonable cause was made prior to two subsequent complaints of discrimination he made to the commission involving the company in which the commission did find reasonable cause to believe that discriminatory practices had taken place. He argues that these subsequent complaints were made on the basis of the same set of circumstances as the complaint relevant to this appeal and, therefore, we should consider them in our resolution of his appeal. First, we note that "[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *State* v. *Rosario*, 113 Conn. App. 79, 93, 966 A.2d 249, cert. denied, 291 Conn. 912, 969 A.2d 176 (2009). We therefore will not review this claim. Moreover, even if we were to afford this claim review, "[j]udicial review of an administrative agency decision requires a court to determine whether there is substantial evidence *in the administrative record* to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Emphasis added; internal quotation marks omitted.) *Ezikovich* v. *Commission on Human Rights & Opportunities,* supra, 57 Conn. App. 770–71. We cannot say that the plaintiff's subsequent complaints or the commission's findings related thereto, are, for the purposes of this appeal, part of the administrative record supporting the finding of no reasonable cause and, therefore, would warrant our consideration here.

must defer to the agency's assessment of the credibility of witnesses. . . . The reviewing court must take into account contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Citations omitted; internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 668, 638 A.2d 6 (1994). Upon our thorough review of the record, guided by the commission's comprehensive recitation of the evidence supporting each of the findings of fact and by its well founded determination of no reasonable cause to believe that the alleged discriminatory and retaliatory acts occurred, we are convinced that the court correctly determined that the commission acted properly. See *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, 273 Conn. 296, 308, 869 A.2d 1198 (2005) ("[a]n administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred" [internal quotation marks omitted]). This claim, therefore, fails.

The judgment is affirmed.

In this opinion the other judges concurred.