JAMES J. FINLEY, JR. *v.* COMMISSIONER OF
MOTOR VEHICLES
(AC 29348)

Bishop, DiPentima and Foti, Js.

Argued December 2, 2008—officially released March 31, 2009

*Ira B. Grudberg*, with whom was *Trisha M. Morris*, for the appellant (plaintiff).

*Eileen Meskill*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Priscilla J. Green*, assistant attorney general, for the appellee (defendant).

BISHOP, J. The plaintiff, James J. Finley, Jr., appeals from the trial court's judgment dismissing his appeal from the order issued by a hearing officer of the department of motor vehicles suspending his motor vehicle operator's license for one year due to his refusal to take a chemical alcohol test in violation of General Statutes § 14-227b. The plaintiff claims that the court improperly concluded that there was substantial evidence in the record to support the hearing officer's findings that the plaintiff (1) was identified as the operator of the motor vehicle in question and (2) improperly refused to submit to a chemical alcohol test. We affirm the judgment of the trial court.

The following facts are pertinent to our resolution of the plaintiff's appeal. On May 19, 2007, at 2:31 a.m., North Haven police dispatch received a 911 telephone call from Lauren Kupec regarding a vehicle being driven erratically. Kupec and her friend, Laura Maselli, who were driving separate vehicles, trailed the driver as he traveled northbound on Universal Drive. Kupec notified the police that a gray Nissan Pathfinder bearing the license plate, 534-TPL, was being driven "back and forth between the left and right lane." Maselli notified the police that the vehicle "was driving very slow, then it would speed up, swerving side to side." Kupec and Maselli followed the driver, whom they identified as male, into the Home Depot parking lot at 111 Universal Drive. They watched as the driver exited his vehicle and began talking on his cellular telephone. Kupec and Maselli drove away when the driver began walking toward their cars. After the police received Kupec's call, Officers Thomas J. Talarico and Valdemar Queiroga were dispatched to the parking lot. Upon Talarico's arrival, he saw a Nissan Pathfinder matching Kupec's description, bearing the same license plate number that Kupec had provided. The plaintiff was sitting alone in

the driver's seat, the vehicle's motor was turned off, and he had the vehicle's keys in his coat pocket. There were no other people in the vicinity. In response to Talarico's question about where he had been, the plaintiff responded that he had just come from New Haven. As the plaintiff spoke, Talarico detected the odor of alcohol from his breath and observed that he had glassy eyes and slurred speech. On the basis of those observations, Talarico asked the plaintiff to exit the vehicle. He observed that the plaintiff's movements were slow and unsteady. Talarico then had the plaintiff perform three standardized field sobriety tests, which the plaintiff failed. On the basis of the eyewitness statements of the plaintiff's erratic driving, the odor of alcohol on his breath and his failing the three sobriety tests, he was placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor. Thereafter, the plaintiff was escorted to police headquarters where he was charged with violating General Statutes § 14-227a.[1] At the police station, an officer read an implied consent advisory form to the plaintiff, which apprised him of the mandatory alcohol testing requirements pursuant to § 14-227b,[2] and requested that the plaintiff submit to a breath test. At 3:01 a.m., the plaintiff was

[1] General Statutes § 14-227a provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content."

[2] General Statutes § 14-227b provides in relevant part: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine . . . .

"(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both, and thereafter, after being apprised of such person's constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having

afforded the opportunity to call his attorney. After concluding his telephone conversation, the plaintiff stated, "I'm refusing to take the test."

On May 25, 2007, the plaintiff's license was suspended for one year due to his refusal to take the chemical alcohol test.[3] Pursuant to § 14-227b, the plaintiff requested and was granted an administrative hearing to contest the suspension. Section 14-227b (g) provides in relevant part: "The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drugs or both . . . (2) was such person placed under arrest; (3) did such person refuse to submit to such [chemical alcohol] test or analysis . . . and (4) was such person operating the motor vehicle." On June 21, 2007, a hearing officer, acting on behalf of the defendant, the commissioner of motor vehicles (commissioner), found that all four criteria had been satisfied. Accordingly, the plaintiff's license was suspended for one year.

The plaintiff appealed to the Superior Court, claiming that the hearing officer improperly suspended his license because (1) the record did not contain reliable, probative and substantial evidence that the plaintiff was

been informed that such person's license or nonresident operating privilege may be suspended in accordance with the provisions of this section if such person refuses to submit to such test, or if such person submits to such test and the results of such test indicate that such person has an elevated blood alcohol content . . . .

"(c) If the person arrested refuses to submit to such test or analysis or submits to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicate that such person has an elevated blood alcohol content, the police officer, acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license . . . ."

[3] The plaintiff's license was suspended for one year because his operator's license previously had been suspended two or more times under § 14-227b.

operating the vehicle on the relevant date and (2) the plaintiff did not improperly refuse to take a chemical alcohol test because that refusal took place more than two hours after his initial contact with the police. On October 19, 2007, the court dismissed the plaintiff's appeal, concluding that (1) there was substantial evidence to establish that the plaintiff was operating the vehicle at issue prior to his arrest and (2) the two hour testing window is irrelevant when a party refuses to take a chemical alcohol test. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the record before the hearing officer lacked sufficient evidence to show that he was identified properly as the operator of the vehicle at issue because (1) neither of the eyewitnesses identified him as the operator of the vehicle, (2) the vehicle's motor was not running and the keys were not in the ignition when the police found him and (3) he never told the police that he was the operator of the vehicle. The commissioner contends that the police report, including two eyewitness narratives, provided substantial evidence on which the hearing officer reasonably could rely to determine that the plaintiff was identified correctly as the operator of the subject vehicle. We agree with the commissioner.

We begin by articulating the standard of review for an appeal from the decision of an administrative agency. "[J]udicial review of the commissioner's action is governed by the [Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.] and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those

facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. [See] General Statutes § 4-183 (j) (5) and (6).[4] An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . . It is fundamental that a plaintiff has the burden of proving that the commissioner, on the facts before him, acted contrary to law and in abuse of his discretion . . . . The law is also well established that if the decision of the commissioner is reasonably supported by the evidence it must be sustained. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review." (Citations omitted; internal quotation marks omitted.) *Jim's Auto Body* v. *Commissioner of Motor Vehicles*, 285 Conn. 794, 816–17, 942 A.2d 305 (2008).

---

[4] General Statutes § 4-183 (j) provides in relevant part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or . . . arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal . . . or remand the case for further proceedings. . . ."

At the outset, we note that "the issue of whether one operates a motor vehicle within the meaning of § 14-227a is to be determined on a case-by-case basis, making [p]roof of operation . . . a factual determination . . . ." (Citation omitted; internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 344–45, 757 A.2d 561 (2000). "[T]here is no requirement that the fact of operation be established by direct evidence." Id., 345. In fact, our Supreme Court has stated that "[i]t is not the function of an appellate court to insist that one particular type of evidence be presented before finding substantial evidence to be present. . . . [T]here is no distinction between direct and circumstantial evidence [so] far as probative force is concerned . . . . In fact, circumstantial evidence may be more certain, satisfying and persuasive than direct evidence." (Internal quotation marks omitted.) *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 834, 955 A.2d 15 (2008). We note, as well, as we begin our analysis of the plaintiff's claims, that operation of the motor vehicle is not an issue on appeal. That is, the plaintiff does not contest the finding that the motor vehicle in which he was found had been observed by the witnesses being operated in an erratic fashion. Rather, he claims that the evidence was insufficient to identify him as the operator. Our careful review of the record reveals that the commissioner's finding is supported by substantial evidence from which the plaintiff's identity as the operator of the vehicle reasonably could be inferred.

As noted, the record clearly shows that the plaintiff's vehicle was operated in an erratic manner. The question we address is whether there was sufficient evidence to identify the plaintiff as the operator of the vehicle. The record reveals that two witnesses reported seeing a gray Nissan Pathfinder swerving northbound along Universal Drive at 2:31 a.m. on May 19, 2007. The witnesses

followed the vehicle into the Home Depot parking lot but left after the driver began to approach them. An officer, who was dispatched to the scene, found the plaintiff sitting alone in the driver's seat of the particular vehicle that the witnesses previously had identified by physical description and license plate number. When confronted by a police officer, the plaintiff stated that he had just come from New Haven and that he had the vehicle's keys in his pocket. Although the record does not show the precise time that the police arrived at the scene, the logical inference from the sequence of events is that the police arrived at the scene shortly after receiving a 911 call. This sequence includes the arrival of the police at the scene, their initial confrontation with the plaintiff, the administration of field sobriety tests to him, the taking of the plaintiff into custody and the transporting of the plaintiff to the police department all before his 3:01 a.m. call to his attorney. In addition to the relatively short time frame and the plaintiff's response to the officer that he had just come from New Haven, evidence that the plaintiff was alone in the vehicle when the police arrived and the fact that there was no one else in the vicinity further supports the hearing officer's conclusion that the plaintiff was the operator of the vehicle that the witnesses had seen being operated erratically.

In addition to his general attack that the evidence was insufficient to identify him as the operator, the plaintiff argues that the evidence was lacking because neither witness specifically identified him. A reasonable inference may be drawn, however, that the plaintiff was the operator of the vehicle because he was found in the vehicle in the exact location where the witnesses reported seeing the operator. See *O'Rourke* v. *Commissioner of Motor Vehicles*, 33 Conn. App. 501, 508–509, 636 A.2d 409 (inferences drawn from totality of circumstances provide sufficient evidence to establish operation), cert. denied, 229 Conn. 909, 642 A.2d 1205 (1994).

In fact, this court has found sufficient evidence of the identity of the operator where there were no witnesses and the plaintiff was not in the vehicle at issue. For example, in *Kirei* v. *Hadley*, 47 Conn. App. 451, 705 A.2d 205 (1998), this court concluded that there was sufficient evidence at trial that the plaintiff operated the vehicle in question even though he was found two-tenths of a mile away from the accident scene and there were no eyewitnesses to his operation of the vehicle. Id., 453. In that case, sufficient evidence of the plaintiff's identity as the operator was based on the inferences drawn from the fact that the plaintiff claimed ownership of the vehicle, the car was warm, and he admitted to driving recently. Id. Moreover, "[t]he absence of witnesses to the plaintiff's operation of the vehicle is not dispositive on the issue of operation. To be sure, it is often the case that police officers investigate § 14-227a violations after the intoxicated driver has ceased operating the vehicle." *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 347.

The plaintiff also contends that there was a lack of sufficient evidence of his identity as the operator because his vehicle's motor was not running and his key was not in the ignition when the police arrived. He relies on *Sengchanthong* v. *Commissioner of Motor Vehicles*, 281 Conn. 604, 610–11, 917 A.2d 942 (2007), and *State* v. *Haight*, 279 Conn. 546, 903 A.2d 217 (2006), in which our Supreme Court concluded that the mere insertion of a key into an ignition is an act that constitutes operation. *Sengchanthong* v. *Commissioner of Motor Vehicles*, supra, 610–11; *State* v. *Haight*, supra, 555–56. In the present case, however, the commissioner does not claim that the plaintiff was in the process of operation when the officers came upon the plaintiff in the parking lot. Rather, the claim of operation is based on the statements of the witnesses regarding erratic operation, the identification of the motor vehicle being

so operated and the subsequent identification of the plaintiff as the person who had been operating the motor vehicle. Thus, the fact that the vehicle may not have been in operation when the police arrived is not material to the present analysis.

Last, the plaintiff argues that there was insufficient evidence of his identity as the operator because he did not admit to operating the vehicle. Such an admission, however, is not necessary to establish that he was the operator because operation may be proven by direct or circumstantial evidence. *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 345.

We conclude, therefore, that the administrative record contained substantial evidence supporting the commissioner's finding that the plaintiff was the operator of the vehicle at issue.

II

The plaintiff next claims that the hearing officer's conclusion that he improperly refused to submit to a chemical alcohol test was erroneous because that refusal was obtained more than two hours after his initial contact with the police. We disagree.

Pursuant to § 14-227b (c), if the person arrested for driving while intoxicated refuses to submit to a chemical alcohol test or takes the test within two hours of the time of operation, and the results of such test or analysis indicate that such person has an elevated blood alcohol content, the police officer, acting on behalf of the commissioner, shall immediately revoke and take possession of the operator's license. General Statutes § 14-227b (c).

We need not determine whether the two hour limit is applicable to refusals to submit to a test because our review of the record reveals that the plaintiff refused to take the chemical alcohol test within two hours of

his initial contact with the officers. The police incident report, which indicates that it was prepared on May 19, 2007, at 4:06 a.m., includes the following information. The police received a telephone call about the plaintiff's erratic operation at 2:31 a.m., and two officers were then dispatched to the plaintiff's location. Thereafter, the plaintiff was taken into custody. At the police station, once the plaintiff was charged and read his rights, he was then afforded the opportunity to call his attorney at 3:01 a.m. After he concluded his telephone conversation, the plaintiff refused to take the chemical alcohol test. Because the initial call to the police was at 2:31 a.m. and the report, including a recitation of the plaintiff's refusal to take the test, was prepared less than two hours later, at 4:06 a.m., the refusal logically took place within the two hour period.[5] Consequently, because the record belies the plaintiff's contentions regarding the timing of his refusal, this claim, too, fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] The basis of the plaintiff's claim that his refusal occurred five hours after his initial contact with the police apparently is based on the Breathalyzer test printout, which is time marked at 7:25 a.m., almost five hours after his initial 2:31 a.m. contact with the police. We do not consider the printout as evidence of the timing of the plaintiff's refusal as anything more than an indication of the time on which the record of the plaintiff's refusal was printed.