JANNINE FALVEY *v.* ROSE ZUROLO ET AL.
(AC 31860)

Bishop, Gruendel and Foti, Js.

---

Argued November 30, 2010—officially released July 19, 2011

*William J. Kupinse, Jr.*, with whom, on the brief, was *Andrew M. McPherson*, for the appellant (plaintiff).

*Peter C. Barrett*, for the appellee (defendant Robert Mirto, conservator of the person and estate of the named defendant).

*Opinion*

BISHOP, J. The plaintiff, Jannine Falvey, appeals from the judgment of the Superior Court denying her appeal from the order of the Probate Court for the district of Orange, which denied her application to become conservator of the person and the estate of her mother, Rose Zurolo. On appeal, the plaintiff claims that the Superior Court improperly (1) interpreted General Statutes § 45a-650 (h) when it affirmed the Probate Court's appointment of the defendant attorney Robert Mirto as a neutral third party conservator[1] and (2) found that there was substantial evidence in the record to support the Probate Court's denial of her application to be appointed conservator on the ground that she had an existing or potential conflict of interest.[2] We reverse in part and affirm in part the judgment of the Superior Court.

The following facts, as found by the court, and procedural history are relevant to our resolution of the plaintiff's appeal. In 1998, the plaintiff began assisting Zurolo

[1] On April 8, 2008, the Probate Court, *Carangelo, J.*, appointed Mirto to be the conservator of Zurolo and of her estate. Mirto participates in this appeal in his capacity as conservator. Vanessa Ramadon, Zurolo's other daughter, is also a defendant but has not participated directly in this appeal. For convenience, we shall refer solely to Mirto as the defendant.

[2] The plaintiff also claims that she should not be personally responsible for attorney's fees incurred in this action after the defendant's appointment in April, 2008. Nowhere in the Probate Court's decision or the memorandum of decision from the Superior Court are there any orders regarding whether the plaintiff should be able to collect from the estate the fees she incurred or may have incurred following the defendant's appointment. Rather, it appears that the Superior Court actually agreed with the plaintiff regarding her claim that the Probate Court incorrectly determined that her incurrence of fees prior to the defendant's appointment was improper. Accordingly, the plaintiff's claim is not properly before this court as it does not arise from any order reflected in the record.

in her financial and health decisions. In 2002, the plaintiff became a cosigner on Zurolo's bank account and subsequently began signing checks for Zurolo. On February 8, 2007, the plaintiff, by way of affidavit, invoked a springing power of attorney granted to her by Zurolo. On August 30, 2007, because Zurolo was exhibiting signs of dementia, the plaintiff applied to the Probate Court for the district of Orange to become conservator of Zurolo and her estate. Although the interested parties involved in the probate trial all agreed that Zurolo would be best served by the appointment of a conservator, the plaintiff's sister, Vanessa Ramadon, and Zurolo's court-appointed attorney, Theresa Nikols, advocated for having a neutral third party, and not the plaintiff, appointed as conservator.[3] Over the course of a four day trial, the Probate Court received testimony from nine witnesses regarding Zurolo's condition, her estate, and the qualifications of the plaintiff to become conservator. The defendant did not testify at the trial nor was there any evidence regarding his potential suitability for appointment. Indeed, his name never arose as a potential conservator.

On April 8, 2008, the Probate Court, by way of a memorandum of decision, found by clear and convincing evidence that a conservator should be appointed for the person and the estate of Zurolo. The Probate Court, however, denied the plaintiff's application to be appointed, finding that she acted improperly in 2005, when she personally received funds and wrote checks from Zurolo's bank account payable to herself or to cash. On the basis of this existing or potential conflict of interest, the Probate Court found that the plaintiff was disqualified from being appointed conservator pur-

---

[3] Nikols stated that the contentious relationship between the plaintiff and Ramadon was a significant factor regarding her decision to advocate for a neutral third party conservator.

suant to § 45a-650 (h), as amended by Public Acts 2007, No. 07-116, § 16 (h) (P.A. 07-116).[4] At the same time the court disqualified the plaintiff, the Probate Court appointed the defendant as conservator of Zurolo and her estate.[5]

On April 28, 2008, the plaintiff appealed to the Superior Court claiming, inter alia, that the Probate Court improperly denied her application to be her mother's conservator. The plaintiff also challenged the Probate Court's appointment of the defendant.[6] On December 23, 2009, the Superior Court, *Bellis, J.*, by way of a memorandum of decision, denied the plaintiff's appeal regarding her disqualification and the defendant's

[4] General Statutes § 45a-650 (h), as amended by Public Acts 2007, No. 07-116, § 16, provides in relevant part: "The respondent or conserved person may appoint, designate or nominate a conservator . . . or may, orally or in writing, nominate a conservator who shall be appointed unless the court finds that . . . there is substantial evidence to disqualify such person. If there is no such appointment . . . or if the court does not appoint the person appointed . . . the court may appoint any qualified person . . . . In considering who to appoint as conservator, the court shall consider (1) the extent to which a proposed conservator has knowledge of the respondent's or conserved person's preferences regarding the care of his or her person or the management of his or her affairs, (2) the ability of the proposed conservator to carry out the duties, responsibilities and powers of a conservator, (3) the cost of the proposed conservatorship to the estate of the respondent or conserved person, (4) the proposed conservator's commitment to promoting the respondent's or conserved person's welfare and independence, and (5) any existing or potential conflicts of interest of the proposed conservator."

[5] The Probate Court stated expressly: "Having considered the factors set forth in § 45a-650 (h) . . . and the evidence obtained through this trial, this court appoints attorney Robert Mirto . . . as [the] conservator of the estate of [Zurolo]." The defendant's appointment as conservator became effective upon the Probate Court's receipt of a $10,000 surety bond. Although not stated explicitly, the Probate Court's bond requirement is in accordance with § 45a-650 (i), requiring a bond for a court-appointed conservator.

[6] In addition to her appeal, the plaintiff also filed a motion for a temporary injunction and a motion to stay the order of the Probate Court. On May 1, 2008, the court, *Hon. John W. Moran*, judge trial referee, granted the plaintiff's motion for a temporary injunction and subsequently granted the plaintiff's motion to stay, pending her appeal to the Superior Court.

appointment.[7] That court concluded that the defendant had been appointed properly as conservator pursuant to § 45a-650 (h), and rejected the plaintiff's claim that the Probate Court had a statutory obligation to conduct a hearing regarding the defendant's qualifications. The court also found that there was substantial evidence to support the Probate Court's finding that the plaintiff had a conflict of interest and, consequently, the Probate Court properly denied her application to serve as her mother's conservator.[8] This appeal followed.

I

The plaintiff first claims that the appointment of the defendant, as a neutral third party conservator, was based on an incorrect construction of § 45a-650 (h). As noted, § 45a-650 (h) provides that, absent a designation of a proposed conservator by the conserved person, the court "may appoint any qualified person, authorized public official or corporation in accordance with subsections (a) and (b) of section 45a-644." Section 45a-650

[7] Pursuant to General Statutes § 45a-186 (a), as amended by P.A. 07-116, § 2, the court's review of the plaintiff's appeal was conducted on the record. This standard of review reflected a change in the law regarding review of probate appeals taken under § 45a-650. Section 45a-186 (a) provides in relevant part: "Any person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise specially provided by law, may . . . appeal therefrom to the Superior Court. . . . Appeals from any decision rendered in any case after a recording is made of the proceedings under section 17a-498, 17a-685, 45a-650, 51-72 or 51-73 shall be on the record and shall not be a trial de novo."

[8] The court reviewed the plaintiff's claims pursuant to General Statutes § 45a-186b, which provides in relevant part: "In an appeal taken under section 45a-186 from a matter heard on the record in the Court of Probate, the Superior Court shall not substitute its judgment for that of the Court of Probate as to the weight of the evidence on questions of fact. The Superior Court shall affirm the decision of the Court of Probate unless the Superior Court finds that substantial rights of the person appealing have been prejudiced because the findings, inferences, conclusions or decisions are . . . clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, or . . . arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ."

(h) further states that the court shall consider certain factors "[i]n considering who to appoint as conservator." In this case, the Probate Court denied the plaintiff's application to be appointed conservator of the person and the estate of her mother, and, instead, without giving the parties notice of its intentions or an opportunity to be heard on the designation of the conservator, appointed the defendant. Although the court, in its memorandum of decision, stated that it had considered the factors enumerated in § 45a-650 (h), it is undisputed that there was no evidence presented as to those factors as they related to the defendant. The plaintiff contends that this deficiency renders the court's appointment of the defendant improper. We agree.

Because the question of whether § 45a-650 (h) requires the court to hear evidence before the appointment of a neutral third party conservator presents a question of statutory interpretation, our review is plenary. See *Saunders* v. *Firtel*, 293 Conn. 515, 525, 978 A.2d 487 (2009). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case . . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding

its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . We recognize that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Internal quotation marks omitted.) *State* v. *Leak,* 297 Conn. 524, 532–33, 998 A.2d 1182 (2010).

Faced with this task of statutory interpretation, the initial question we must answer is whether the language of § 45a-650 (h) clearly and unambiguously provides that the court may appoint a neutral third party conservator without taking evidence of the person's suitability and qualifications. We believe the silence of the statute in this regard renders the statute ambiguous. It is appropriate, therefore, for us to search the legislative history, as well as to review the entire relevant statutory scheme, in our effort to determine the meaning the legislature intended to give the language of the statute at hand.

Public Act 07-116 made procedural changes to various Probate Court proceedings, including the appointment of conservators. Public Act 07-116 established the requirement that certain probate proceedings, including all applications for conservatorship, be heard on the record. See General Statutes § 45a-645a.[9] Public Act 07-116, § 16, now codified as § 45a-650, pertains specifically to hearings on applications for involuntary representation. It dictates that the rules of evidence apply to all hearings and that all testimony be given under oath or affirmation. See General Statutes § 45a-650 (b). It also prescribes the factual findings that the Probate

---

[9] General Statutes § 45a-645a provides: "Each court of probate shall cause a recording to be made of all proceedings held under sections 45a-644 to 45a-663, inclusive. The recording shall be part of the court record and shall be made and retained in a manner approved by the Probate Court Administrator."

Court is required to make in considering an application for conservatorship and the evidentiary standards by which the court must make its determinations. For instance, § 45a-650 (a) mandates that the court require clear and convincing evidence that the court has jurisdiction, that the respondent has been given notice and that the respondent has been advised of the right to retain an attorney. See General Statutes § 45a-650 (a). Prior to appointing a conservator, P.A. 07-116 requires the court to find by clear and convincing evidence that the respondent is incapable of managing his or her affairs or is incapable of caring for himself or herself, or both; see General Statutes § 45a-650 (f) (1) and (2); and sets forth factors for the court's consideration in making such a finding. See General Statutes § 45a-650 (g).

Although § 45a-650 (h) sets forth factors for consideration by the court in appointing a conservator, it does not prescribe the evidentiary standard by which the court must examine these factors. In fact, the statute does not specifically require that the court hear evidence pertaining to these factors. Despite the absence of explicit language regarding the evidentiary burden to be applied to these factors, or any requirement of an evidentiary hearing, the language of the statute does not plainly and unambiguously establish that the court need not take evidence in determining whom to appoint as conservator. To the contrary, a reasonable inference from the statute is that the court should base its determination on evidence adduced during a hearing at which interested parties have the right to participate.

In reaching this conclusion, our analysis is aided by reference to the statutory scheme as a whole. In examining the language of § 45a-650, in addition to the other provisions enacted under P.A. 07-116, it is apparent that one of the primary goals of P.A. 07-116 was to have probate proceedings recorded in order to promote

transparency and accountability in probate proceedings, as well as to facilitate the appeals process from those proceedings. This is supported by a review of the legislative history of P.A. 07-116. The legislative history reveals that several legislators recognized the need for accountability in the probate system, and expressed the fact that this bill addressed that need. For instance, Senator Mary Ann Handley commented that the bill provides "a good deal of accountability for the probate judge and the conservators who have been appointed." 50 S. Proc., Pt. 10, 2007 Sess., p. 3234. Similarly, Representative Gerald M. Fox III remarked that one of the goals of the act was to "ensure that . . . due process safeguards are in place before a probate court interferes with an individual's civil rights by forming a conservator." 50 H.R. Proc., Pt. 16, 2007 Sess., pp. 5150–51. To that end, P.A. 07-116 requires that a record be made of the conservator proceedings. Id., p. 5151. Representative James F. Spallone echoed that sentiment in stating: "[W]hat we're trying to do here is put in procedural protections to ensure that if a person's liberty interest is at stake that they will be treated fairly, and that a proper record will be kept so that if an appeal is necessary, we'll know what happened, and so that the press and public can monitor how the probate system is working with respect to conservatorships." Id., p. 5155. In the same vein, attorney Deborah Tedford, who had previously testified before the General Assembly on behalf of the Connecticut Bar Association and regularly practices in the Probate Court, expressed the importance of having a record in probate proceedings to provide some accountability in the system and to change the culture in general. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 17, 2007 Sess., pp. 5540–41.

The judiciary committee also heard testimony from several members of the public regarding their experience with conservators and how P.A. 07-116 would help

to eliminate similar problems in the future. The testimony revealed that many of the problems with conservators stemmed from those who did not know the needs or preferences of the conserved persons. Notably, one constituent complained that the Probate Court went against her mother's wishes to have her appointed as her conservator and, instead, appointed a nonfamily member, to her mother's detriment. She complained that: "Probate judges have broad discretion for the selection of conservators. These are often patronage appointments which can also lead to conflicts of interest since many judges are part time and appoint those who practice before them and contribute to their elections." Id., p. 5504. That same constituent praised P.A. 07-116 for providing "oversight and accountability of the Probate Courts by requiring recorded hearings and findings . . . ." Id., p. 5505. Royal Stark, a professor and the director of the health law clinic at Quinnipiac Law School, served on the committee charged with drafting the bill. He commented on the need to "transform the culture of the Probate Courts"; id., p. 5464; and to change "the culture of informality" in the probate system. Id., p. 5474. Representative Gail K. Hamm also noted the importance of "accountability" in the probate system so that there is "some movement on the culture" and so that the legislators "have some sense that [they're] not just changing the law, [but] that [they're] changing the system." Id., p. 5473.

From our review of these legislative proceedings, it is clear that the legislature contemplated and intended that P.A. 07-116 would result in substantial changes in the probate system, one of which being that, going forward, certain proceedings, including those involving conservatorships, would be on the record and, thus, more formal, providing accountability, transparency and due process safeguards for those involved. By

requiring a proceeding on the record, it is more reasonable to believe that the legislature also contemplated that the consideration of the factors enumerated in § 45a-650 (h) would be based upon evidence in the record rather than the alternative; that a judge could select someone arbitrarily without any evidence regarding the factors the statute requires the court to consider and without giving interested parties an opportunity to present evidence relevant to the court's selection of a conservator.[10] Indeed, it is only through the presentation of evidence that the court may become properly informed as to the proposed conservator's knowledge of the person's preferences regarding care and management of his or her affairs or any existing or potential conflicts of interest. Additionally, requiring that there be evidence on the record regarding a potential conservator's qualifications and suitability is consistent with the legislature's aim to establish transparency in probate proceedings. Requiring evidence regarding the factors for consideration to be on the record also helps to ensure that a proposed conserved person and other interested parties are afforded due process and that the record is adequate for appellate review by the trial court and this court.[11]

[10] That is not to say that such a hearing could not be waived if interested parties have notice of the court's intention to appoint a person other than the applicant as conservator. Here, as noted, the court appointed the defendant as conservator through the vehicle of the same memorandum of decision in which it denied the plaintiff's application. Thus, neither the plaintiff nor any other interested parties had notice that the court might appoint someone else and, consequently, they had no opportunity to be heard regarding the naming of the conservator.

[11] Although we are not unmindful that probate judges often have detailed information about and experience with persons they appoint to serve as conservators, we agree with the plaintiff's observation that if we interpreted the statute to permit the court to appoint any person of its choosing without evidence regarding the person's suitability and competence, interested parties would, as a practical matter, be without any recourse on appeal because of the absence of a record regarding the appointment. Such a construction, as noted, would be contradictory to the overarching purposes of the newly framed statutory scheme to be transparent and accountable. Nor do we

Finally, there is an absence in § 45a-650 (h) of an explicit reference to the requisite evidentiary standard for appointing a conservator, as opposed to other portions of the statute which do set forth an evidentiary standard. Those portions of the statute that set forth a higher burden of proof required for certain considerations cannot fairly be understood to suggest that one area of consideration requires evidence and, by silence regarding the level of proof required, another area of consideration requires no proof at all. Instead, a more sensible understanding of the contrasting sections is that the absence of any specification regarding the burden of proof required for the selection of a qualified conservator means only that the default burden of fair preponderance should be utilized instead of the clear and convincing standard, which must be made explicit if it is to be utilized. See *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 819, 955 A.2d 15 (2008).

Here, although the Probate Court indicated that it considered the factors set forth in § 45a-650 (h) in appointing the defendant, necessarily implying that it found him to be qualified, the record is bereft of any evidence regarding the defendant or his qualifications to be conservator. Additionally, it is clear from the record that the interested parties in this matter did not have the opportunity to weigh in on his selection. Because the record contains no evidence regarding the defendant, any finding regarding the defendant's qualifications finds no support in the record. The appointment of the defendant was therefore arbitrary and constituted an abuse of discretion.

believe that some measure of accountability may be achieved by the requirement that any appointment is subject to a periodic review. The promise of an after the fact review of the activities of a conservator is a measure too late and is no substitute for a meaningful process leading to the initial appointment as the criteria for each are not the same.

## II

The plaintiff also claims that the Probate Court improperly denied her application for conservator on the ground that there was substantial evidence that she had an existing or potential conflict.[12] We disagree.

We begin by setting forth the applicable standard of review for appeals from a Probate Court. As noted, General Statutes § 45a-186b provides in relevant part: "[T]he Superior Court shall not substitute its judgment for that of the Court of Probate as to the weight of the evidence on questions of fact. The Superior Court shall affirm the decision of the Court of Probate unless the Superior Court finds that substantial rights of the person appealing have been prejudiced because the findings, inferences, conclusions or decisions are  . . . clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, or . . . arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ." Given that § 45a-186b was also a component of the legislature's probate reform in 2007, there is a lack of appellate jurisprudence regarding its application. See P.A. 07-116. The language of § 45a-186b, however, is virtually identical to the language used in General Statutes § 4-183 (j) of the Uniform Administrative Procedure Act.[13] Given the similarity of this statutory language, our application of § 4-183 (j) is instructive.

[12] In her appellate brief, the plaintiff also raises separate claims that the Probate Court impermissibly considered factors not enumerated in § 45a-650 (h), namely, her contentious relationship with her sister, in rendering its decision. The plaintiff also claims that there was substantial evidence on the record to appoint her as conservator. These claims are inextricably related to the plaintiff's claim that there was not substantial evidence to disqualify her as conservator. Because our conclusion that there was substantial evidence contained in the record to find that the plaintiff had an existing or potential conflict of interest is dispositive, we need not reach these claims.

[13] The only substantive difference between § 45a-186b and § 4-183 (j) is that § 45a-186b refers to a "court of probate" rather than "agency" as stated in § 4-183 (j).

As this court has previously noted, the scope of our review regarding an administrative appeal is restricted. A court must "determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency [or court], in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Finley* v. *Commissioner of Motor Vehicles*, 113 Conn. App. 417, 422–23, 966 A.2d 773 (2009). "The substantial evidence standard is satisfied if the record provides a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) *Prioleau* v. *Commission on Human Rights & Opportunities*, 116 Conn. App. 776, 781, 977 A.2d 267 (2009). "As an appellate court, we do not review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . The goal of our analysis is simply to decide whether the trial court's conclusion was reasonable." (Internal quotation marks omitted.) *Zahringer* v. *Zahringer*, 124 Conn. App. 672, 679, 6 A.3d 141 (2010). Using this standard as a backdrop, we will give deference to the Probate Court's determination of the credibility of witnesses and its factual determinations. Cf. *Kirei* v. *Hadley*, 47 Conn. App. 451, 457, 705 A.2d 205 (1998) (credibility of witnesses within province of hearing officer).

Relying on § 45a-650 (h), the Probate Court rejected the plaintiff's application, finding that she possessed an existing or potential conflict of interest. See General Statutes § 45a-650 (h). Whether a conflict of interest

existed is inherently a factual issue. See *Timber Trails Associates* v. *Planning & Zoning Commission*, 99 Conn. App. 768, 775, 916 A.2d 99 (2007). In support of its finding, the Probate Court cited to the plaintiff's testimony coupled with evidence that she received and wrote checks out to herself from Zurolo's bank account in 2005.[14] The Probate Court also referred to the contentious relationship between the plaintiff and Ramadon as further evidence that the appointment of the plaintiff as conservator would not comport with the statutory requirement of implementing the least restrictive means available.[15]

The plaintiff asserts that the Probate Court's conclusion regarding her conflict of interest cannot reasonably be drawn from the facts. Specifically, she argues that the Probate Court improperly inferred that the checks that she had written out to herself in 2005 illustrated a misappropriation of her power of attorney because, at the time, she had not invoked that power. Although it does appear that the Probate Court confused the plaintiff's authority in 2005, as a cosigner on Zurolo's bank account, with her duties under a power of attorney in 2007, we conclude that this miscalculation was harmless error which does not negate the evidentiary basis

[14] Prior to invoking her power of attorney, the plaintiff was a cosigner on Zurolo's bank account. In its memorandum of decision, the Probate Court referred specifically to five checks made out to the plaintiff or to cash as being a factor in its decision that the plaintiff had an existing or potential conflict of interest. Specifically, the Probate Court stated that the plaintiff "acting as the power of attorney . . . acted improperly by writing checks out to herself . . . ." Only two out of the five checks were actually signed by the plaintiff.

[15] General Statutes § 45a-644 (k) provides: " 'Least restrictive means of intervention' means intervention for a conserved person that is sufficient to provide, within the resources available to the conserved person either from the conserved person's own estate or from private or public assistance, for a conserved person's personal needs or property management while affording the conserved person the greatest amount of *independence and self-determination*." (Emphasis added.)

for the Probate Court's finding that the execution of those checks, combined with the plaintiff's testimony, created an inference of impropriety and illustrated an existing or potential conflict of interest. See *Driscoll* v. *Norwich Savings Society*, 139 Conn. 346, 350, 93 A.2d 925 (1952) ("[a]n obvious mistake will be disregarded . . . where the court makes it in stating one of its conclusions, where the subordinate facts found accorded with the allegations of the pleadings and supported the judgment" [internal quotation marks omitted]). All five checks were either made out to the plaintiff or were made out to cash, totaling $38,000.[16] Although the plaintiff testified that the checks were gifts from her mother, she was unable to explain why these gifts did not appear in her mother's tax returns for 2005, even though she was involved in assisting Zurolo's attorney in compiling financial and tax information. Additionally, Patricia Morrissey, a registered nurse and one of Zurolo's health care providers at her assisted living community, testified that the acrimonious relationship between the plaintiff and Ramadon had a detrimental effect on Zurolo's overall well-being. During Nikols' closing remarks, she argued that she was not comfortable with either of Zurolo's daughters being appointed conservator, and that she was especially concerned given that "there is something or someone stopping people from communicating with [my client]." At the time, the plaintiff's duties as power of attorney had commenced and Ramadon had limited contact with Zurolo. On the basis of the foregoing, we conclude that the Probate Court's determination that there was an existing or potential conflict

---

[16] Prior to invoking the springing power of attorney, the plaintiff was a cosigner on Zurolo's bank account. In 2005, five checks totaling $38,000 were made out to the plaintiff or to cash. Each check was in the amount of $7600. Two of those checks were made out to the plaintiff and signed by the plaintiff under her authority as cosigner. With respect to the three other checks, two were made out to the plaintiff and one was made out to cash and all three were signed by Zurolo.

of interest regarding the plaintiff's application to become conservator is supported by substantial evidence. Accordingly, the court's denial of the plaintiff's application was not improper.

The judgment is reversed to the extent that it affirms the Probate Court's decision appointing the defendant as conservator and the case is remanded to the Superior Court with direction to set aside the decision of the Probate Court in that regard and to remand the case to the Probate Court for a hearing on the appointment of a neutral conservator in accordance with this opinion. The judgment is affirmed in all other respects.

In this opinion GRUENDEL, J., concurred.

FOTI, J., dissenting in part. I respectfully disagree with the majority's conclusion that the trial court improperly construed General Statutes § 45a-650 (h) when it affirmed the Probate Court's appointment of the defendant attorney Robert Mirto as a neutral third party conservator without first receiving evidence regarding his qualifications. In contradistinction from the majority, I do not believe that the absence of language in § 45a-650 (h), requiring that a Probate Court receive evidence on the qualifications of a neutral third party conservator, renders the plain language of the statute ambiguous. Accordingly, I dissent from part I of the majority decision.[1] I agree with the facts set forth in the majority's opinion and will not repeat them in this opinion.

In addition to the majority's enunciation of our process of statutory interpretation, I note that "[t]he legislature is always presumed to have created a harmonious

---

[1] I join the majority's conclusion that there was sufficient evidence in the record to affirm the Probate Court's determination that there was either an existing or potential conflict of interest regarding the application of the plaintiff, Jannine Falvey, to become conservator of her mother's estate. I also agree with the conclusion that the plaintiff's claim pertaining to attorney's fees is not properly before this court.

and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter. . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . [T]he General Assembly is always presumed to know all the existing statutes and the effect that its action or [nonaction] will have upon any one of them." (Internal quotation marks omitted.) *Wilton Meadows Ltd. Partnership* v. *Coratolo*, 299 Conn. 819, 828, 14 A.3d 982 (2011). "A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation." Id., 825.

It is against this legal backdrop that I begin by underscoring the plain language of the statute with respect to a Probate Court's authority to appoint a neutral third party conservator. Section 45a-650 (h) provides in relevant part: "[I]f the court does not appoint the person appointed, designated or nominated by the respondent or conserved person, *the court may appoint any qualified person,* authorized public official or corporation in accordance with subsections (a) and (b) of section 45a-644. *In considering who to appoint as conservator, the court shall consider* (1) the extent to which a proposed conservator has knowledge of the respondent's or conserved person's preferences regarding the care of his or her person or the management of his or her affairs, (2) the ability of the proposed conservator to carry out the duties, responsibilities and powers of a conservator, (3) the cost of the proposed conservatorship to the estate of the respondent or conserved person, (4) the proposed conservator's commitment to promoting the respondent's or conserved person's welfare and independence, and (5) any existing or potential conflicts of interest of the proposed conservator."

(Emphasis added.) I construe this language to be plain and unambiguous when read in context with the statute as a whole. It specifies clearly that if the Probate Court does not appoint the person nominated by petition to be conservator, then it may, at its discretion, appoint any qualified person. Prior to any appointment, § 45a-650 (h) mandates only that the Probate Court "shall consider" the enumerated factors set forth in the statute. In the present case, after disqualifying the plaintiff's petition to be conservator because of a conflict of interest, the Probate Court stated expressly, "[h]aving considered the factors set forth in § 45a-650 (h) . . . and the evidence obtained through this trial, this court appoints attorney Robert Mirto . . . as the conservator of the person of [Rose Zurolo] and as conservator of the estate of [Zurolo]."[2] Within the context of the statute, the court went no further than was expressly provided by the legislature. See *Wilton Meadows Ltd. Partnership* v. *Coratolo*, supra, 299 Conn. 826.

The majority contends, however, that the plain language of § 45a-650 (h) is rendered ambiguous because there is no guidance in this particular section with respect to whether the court must receive evidence pertaining to the suitability and qualifications in the appointment of a neutral third party conservator. I note, however, that statutory silence does not immediately or necessarily equate to ambiguity. See *Dept. of Public Safety* v. *State Board of Labor Relations*, 296 Conn. 594, 605–606, 996 A.2d 729 (2010) (statutory silence regarding additional requirements that managerial employees exercise independent judgment did not render statute ambiguous); *Wilton Meadows Ltd. Partnership* v. *Coratolo*, supra, 299 Conn. 829–30 (statutory

[2] I note that neither Zurolo's court-appointed attorney nor Vanessa Ramadon, the plaintiff's sister, opposed the appointment of Mirto as a neutral third party conservator.

silence with respect to spousal liability of nursing home expenses not ambiguous).

I do not agree that the trial court's construction of § 45a-650 (h), in conjunction with General Statutes § 45a-186 (a), will yield absurd and unworkable results or is ambiguous as the majority posits.[3] The plain language of § 45a-650 (h) instructs that a Probate Court must appoint the person nominated by the conserved person, unless the person declines or "there is substantial evidence to disqualify such person"; however, in order to appoint a conservator subsequent to such a disqualification, the court is obligated only to *consider* the enumerated factors in the statute. See General Statutes § 45a-650 (h). I presume that by using different language to distinguish between disqualifying and appointing a conservator, the legislature intended to continue to allow Probate Courts the discretion to appoint a conservator without a hearing when there is substantial evidence to disqualify a petitioner. See *Dias*

---

[3] When read in context, the plain language of the statute illustrates that the legislature sought purposefully to maintain the Probate Court's ability to appoint a conservator in circumstances such as these given the adequate statutory protections in place after the conservator is appointed by the court. For example, "[t]he Probate Court is under an affirmative duty to protect the assets of a [conserved person's] estate. . . . The court, and not the conservator, is primarily entrusted with the care and management of the [conserved person's] estate, and, in many respects, *the conservator is but the agent of the court.*" (Citation omitted; emphasis altered; internal quotation marks omitted.) *Marcus' Appeal from Probate*, 199 Conn. 524, 529, 509 A.2d 1 (1986). Contrary to the majority's assertion, I believe that there are ample statutory provisions for review of the Probate Court's appointment of a conservator. General Statutes § 45a-705a specifically allows a conserved person to appeal the legality of guardianship pursuant to a writ of habeas corpus. See General Statutes § 45a-705a. Additionally, the Probate Court is required to "review each conservatorship not later than one year after the conservatorship was ordered, and not less than every three years after such initial one-year review." General Statutes § 45a-660 (c). Subsequent to that review, a conserved person may request, and the Probate Court must grant, a hearing to modify the conservatorship under § 45a-660. See General Statutes § 45a-660 (d).

v. *Grady*, 292 Conn. 350, 361, 972 A.2d 715 (2009)
("when the legislature uses different language [within
a statute], the legislature intends a different meaning"
[internal quotation marks omitted]). Consequently, I
agree with the trial court's conclusion that in circum-
stances in which the legislature has intended a specific
evidentiary standard with respect to conservatorships,
it has provided for such a standard expressly.[4] See, e.g.,
General Statutes § 45a-650 (f) (1) ("clear and convincing
evidence" standard required to render decision that
respondent is incapable of managing own affairs in
order to appoint conservator); General Statutes § 45a-
650 (f) (2) ("clear and convincing evidence" standard
required to render decision that respondent is incapable
of caring for himself or herself); General Statutes § 45a-
650 (a) and (b) (Probate Court must conduct hearing
and apply normal rules of evidence for involuntary rep-
resentation). Given the breadth of substantive reform
ushered in by Public Acts 2007, No. 07-116 (P.A. 07-
116), the absence of any additional requirements on a
probate judge prior to appointing a neutral third party
conservator is, in a word, conspicuous.

"Where a statute, with reference to one subject con-
tains a given provision, the omission of such provision
from a similar statute concerning a related subject . . .
is significant to show that a different intention existed.
. . . That tenet of statutory construction is well
grounded because [t]he General Assembly is always

---

[4] Even if I were to accept the majority's position, that the absence of an
evidentiary requirement requires us to delve into the statutory history of
the statute, the previous language of this provision, when juxtaposed with
the extensive probate reforms instituted by Public Acts 2007, No. 07-116,
illustrate that the legislature intended to maintain that omission purposefully
to allow probate judges the discretion to appoint neutral third party conser-
vators. This is because of a Probate Court's unique position within its commu-
nity to understand the needs of a conserved person in conjunction with its
experience regarding the capabilities of neutral third party conservators to
fulfill those needs. See footnote 5 of this dissent.

presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them." (Internal quotation marks omitted.) *State* v. *Fernando A.*, 294 Conn. 1, 21, 981 A.2d 427 (2009). Certainly, if the legislature had intended to require a hearing or a specific evidentiary standard regarding the appointment of a neutral third party conservator it could have expressly done so, as it has clearly articulated in other subsections of § 45a-650. See, e.g., General Statutes § 45a-650 (a) and (b), and (f) (1) and (2). Cf. *Wilton Meadows Ltd. Partnership* v. *Coratolo*, supra, 299 Conn. 826 (if legislature had intended to extend spousal liability to include nursing home expenses, it could have done so expressly); *Dept. of Public Safety* v. *State Board of Labor Relations*, supra, 296 Conn. 605 (if legislature had intended to impose additional statutory requirements regarding duties of managerial employees it could have done so expressly).

A plain reading of the statute, however, reveals that the legislature has chosen specifically not to mandate such a requirement in circumstances such as these. Moreover, the language contained in the statute, prior to the reforms instituted by P.A. 07-116 regarding a Probate Court's authority to appoint a conservator in similar situations, is virtually identical to the language of § 45a-650 (h).[5] This only serves to buttress the point that the legislature's omission to require an increased evidentiary standard was purposeful. It is firmly established that "[w]e are not permitted to supply statutory

---

[5] General Statutes (Rev. to 2007) § 45a-650 (e) provides in relevant part: "[I]n the absence of any such nomination [of a proposed conservator by the conserved person], the court *may appoint any qualified person*, authorized public official or corporation in accordance with subsections (a) and (b) of section 45a-644." (Emphasis added.) Although P.A. 07-116 subsequently supplemented the criteria that a probate judge shall consider prior to appointing a neutral third party conservator, the revisions made no mention of a requirement for the Probate Court to receive evidence in pertinence to those enumerated factors. Compare General Statutes (Rev. to 2007) § 45a-650 (e) with General Statutes § 45a-650 (h).

language that the legislature may have chosen to omit." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *State Board of Labor Relations,* supra, 296 Conn. 605. Nor are we permitted to go any further than the legislature has gone. See *Wilton Meadows Ltd. Partnership* v. *Coratolo,* supra, 299 Conn. 826. Despite these precedential prohibitions, I believe that the majority has substituted its understanding of what the statute should have expressed in place of what was a purposeful omission by the legislature by interpreting ambiguity where none exists. Although I am sensitive to what the majority is aspiring to accomplish, the result of that endeavor requires this court to legislate. This we cannot do. See *Hayes* v. *Smith,* 194 Conn. 52, 65, 480 A.2d 425 (1984). Accordingly, I would affirm the trial court's judgment affirming the Probate Court's appointment of Mirto as conservator of Zurolo's person and estate.

I respectfully dissent.